AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff in Error, v. MRS. LENA JACKSON, Defendant in Error.

Middle Section.   March 14, 1930.

Bass, Berry & Sims, of Nashville, for plaintiff in error, Insurance Co.

Boyce, Hunt, Hollins & Martin, of Nashville, for defendant in error, Mrs. Jackson.

CROWNOVER, J. This is an action to recover $500, the proceeds of a life insurance policy. The plaintiff obtained a judgment below and the defendant has appealed in error.

The evidence shows that Cullom & Ghertner, a printing establishment in Nashville, took out a group policy of insurance on the lives of its employees. Among the employees insured was Irene Ezell, and her mother, Mrs. Lena Jackson, was named as beneficiary in her certificate.

Irene Ezell had been employed by the Company for two years. She received her wages by the week, but she was employed for no definite length of time. Every Saturday she was paid for the week ending on the previous Friday night. On Saturday, May 28, 1927, she received her week's wages as usual, and was sick when she arrived at home with a fever at 102 degrees. On Monday, she was too sick to return to work, and her sister, on that date, informed the manager of the Company that she was sick and unable to work. The manager asked when she would be able to return, to which the girl replied that she did not know, as she was very sick.

Irene Ezell was sick in bed and totally disabled from May 28, 1927, until her death on April 17, 1928, eleven months later. A few days after she became ill it was discovered that she had tuberculosis, and that there was no hope of a recovery.

She never received any notice of her discharge by the Company, and received no wages during her illness.

In July, 1927, Bainbridge, the manager of Collum & Ghertner, gave to Eula Jackson for delivery to her sister, Irene Ezell, an individual certificate for her insurance under the group policy, on which this suit is based. The certificate was accompanied by a letter, dated July 9, 1927, in which it was stated in substance that the certificate was presented to her in appreciation of her earnest and faithful service and as an expression of her loyal service, and stated: "In the event of your death while in our employ, from any cause whatsoever, the insurance will be paid to the beneficiary."

The certificate was dated April 20, 1927, and recited that the insurance "covered by this policy shall continue only so long as said person remains in the same group insurance relationship to the Master Policyholder and all liability and obligation of the Company with respect to any such person shall cease and determine immediately upon the termination of such relationship without regard to the cause of such termination."

The group policy provided that the premiums should be paid semi-annually in advance and that the employees were insured for six months, and for any subsequent periods for which premiums were paid;

"or for so long as they shall remain employees of said Master Policyholder and this insurance is in force."

"The insurance upon the life of any person covered by this policy shall continue only so long as said person remains in the same group insurance relationship to the Master Policyholder and all liability and obligation of the Company with respect to any such person shall cease and determine immediately upon the termination of such relationship without regard to the cause of such termination."

The policy further provided for refund of unearned premium in the event of the termination of the insurance of any employee.

The first premium of $70 was paid by Cullom & Ghertner on April 27, 1927, and the second premium was due October 20, 1927, and paid December 2, 1927, which extended the insurance to April 20, 1928. Both payments covered the premium for Irene Ezell's policy and included her name.

On December 3, 1927, the day after the payment of the premium for six months ending April 20, 1928, Cullom & Ghertner sent to the Insurance Company a notice, dated November 29, 1927, that Irene Ezell had left their employ on May 28, 1927, and requested a refund of premium and cancellation as of May 28, 1927. The Insurance Company cancelled the insurance as of May 28, 1927, and refunded the premium covering the period from May 28. But no notice of

cancellation was ever given Irene Ezell, and she died on April 17, 1928.

The Insurance Company's motion for a new trial was overruled and it appealed in error to this Court, and has assigned four errors, which are in substance:

(1) The Court erred in overruling defendant's motion for peremptory instruction for a verdict in favor of the defendant, made at the conclusion of the evidence, as there was no evidence which would support a verdict for the plaintiff, and under the undisputed evidence the defendant was not liable to the plaintiff on said policy.

(2) The Court erred in peremptorily instructing the jury to return a verdict in favor of the plaintiff, as there was no evidence which would support such verdict, and under the undisputed testimony the defendant was not liable on said policy.

(3) and (4) The third and fourth assignments went to the admission of certain testimony, over defendant's objections, on the grounds that said testimony was hearsay and conclusions of witnesses on the questions in controversy.

The only determinative question in this suit is whether Irene Ezell was an employee of Cullom & Ghertner at the date of her death. If she was a sick employee, the beneficiary is entitled to recover; but if she ceased to be an employee on account of sickness and disability, then the beneficiary is not entitled to recover.

Group insurance contracts do not create a contract of insurance between the employer and employee, but are between the employer and the insurer for the benefit of the insured employees. 1 Couch's Cyc. of Insurance Law, 44, sec. 29.

Where the employer causes insurance to be issued upon the lives of his employees as a gratuity, he is not the agent of the insurance company in the performance of the obligations imposed by the policy. Duval v. Metropolitan Life Insurance Co. (N. H.), 136 Atl., 400, 50 A. L. R., 1276; Leach v. Metropolitan Life Insurance Co., 124 Kan., 584, 261 Pac., 603.

"In the United States, a general or indefinite hiring is presumed to be a hiring at will. In the absence of custom, or of facts and circumstances showing a contrary intention on the part of the parties, it is generally held that the fact that a hiring is at so much per day, week, month, quarter, or year, raises no presumption that the hiring was for such a period, but only at the rate fixed for whatever time the party may serve." 39 C. J., 44-45, sec. 18; 18 R. C. L., 508-509, sec. 19; 20 Am. & Eng. Ency. of Law (2 Ed.), 14.

A contract for personal service is terminated by the death, insanity, sickness, or permanent disability of a servant, whereby he

is unable to perform his contract, unless the parties contracted to the contrary. 39 C. J., 78, sec. 74; 18 R. C. L., 513, sec. 24; 20 Am. & Eng. Ency. of Law (2 Ed.), 27; Prior v. Flagler, 13 Misc., 115, 34 N. Y. S., 152; Johnson v. Walker, 155 Mass., 253, 31 Am. St. Rep., 550; 1 Labatt on Master & Servant (2 Ed.), 682, sec. 220.

And where one has been sick for an appreciable length of time, whereby he is unable to perform his contract, it is not necessary to give notice of the termination of the contract. The right to terminate the contract does not depend on giving notice to the employee but on the fact that he has become unable to render the services on whose continuance the contract depended. 18 R. C. L., 509, sec. 19; Johnson v. Walker, supra; Kowalski v. Aetna Life Insurance Co. (Mass.), 165 N. E., 476, 63 A. L. R., 1030.

The insurance under a group policy is terminated when the servant ceases to be an employee. Stanford v. Ins. Co., 159 Tenn., 556, 20 S. W. (2d), 1043; Duval v. Metropolitan Life Insurance Co., supra; Wheeler v. Monsanto Chemical Works (Mo. App.), 263 S. W., 881; Chrosniak v. Metropolitan Life Ins. Co., 121 Misc., 453, 201 N. Y. S., 898; Douglas v. Metropolitan Life Insurance Co. (Mo. App.), 297 S. W., 87; Leach v. Metropolitan Life Insurance Co., supra.

The acceptance of a premium through inadvertence and without knowledge that the insured employee had ceased employment, does not extend the insurance in force. Leach v. Metropolitan Life Insurance Co., supra; Equitable Life Assurance Society v. McDaniel, 223 Ky., 505, 3 S. W. (2d), 1093.

If the assured was not in the employment of the master at the time of her death, the failure of the employer to notify the Insurance Company, or the employer's attempted waiver, does not bind the Insurance Company. Duval v. Metropolitan Life Insurance Co., supra; Leach v. Metropolitan Life Insurance Co., supra.

It results that the first two assignments of errors must be sustained for the reason that there is not any conflict in the evidence on the question of Irene Ezell's employment, illness and death. The question of her employment therefore resolves itself into a question of law for the court, and the trial judge should have sustained the defendant's motion for a directed verdict. The case of Kowolski v. Aetna Life Insurance Co., supra, has settled all the determinative propositions in this law suit.

The insistence that Cullom & Ghertner should have notified Irene Ezell that she was discharged in order that she might have had the policy converted into an individual policy, is not well made, because the deceased was legally obligated to know her rights in the matter of demanding an individual policy, and no cancellation by the Company was necessary to advise her as to that. See Chrosniak v. Metropolitan Life Insurance Co., supra.

But we are of the opinion that there is nothing in the contention of the defendant that Cullom & Ghertner had a right to cancel the policy after the premium had been paid, of their own volition, without the beneficiary's consent, irrespective of her employment, as there is nothing in the policy authorizing Cullom & Ghertner to cancel the policy at will. After the premium has once been paid the assured has no right to cancel the policy without the consent of the beneficiary unless he is given that right in the face of the policy. Under an ordinary policy of life insurance, in which there is no reservation of the right to cut off or modify the interest of the beneficiary, the latter has a vested interest in the policy, of which he cannot be divested without his consent. 7 Cooley's Briefs on Insurance, 6399-6406; Marquet v. Insurance Co., 128 Tenn., 213, 159 S. W., 733, L. R. A. 1915-B, 749, Ann. Cas. 1915-B, 677; Myerson v. New Ideal Hosiery Co. (Ala.), 115 So. 94, 55 A. L. R., 1231; Thompson v. Pacific Mills, 141 S. C., 303, 139 S. E., 619, 55 A. L. R., 1237.

The fact that the employer reported to the Insurance Company the termination of employment of the employee as of a certain date, is not necessarily binding on the beneficiary, unless the beneficiary had ceased to be an employee. Douglas v. Metropolitan Life Insurance Co., supra.

The third and fourth assignments of error as to the admission of testimony of two witnesses that Mr. Bainbridge, the manager of Cullom & Ghertner, had told them that the policy was in force, becomes immaterial in view of our action on the first and second assignments of errors, but as this case may be removed to the Supreme Court we will pass on these assignments of errors, and we hold that the court erred in permitting these witnesses to prove these statements, for the reason that they were merely the expression of an opinion of Bainbridge; but we are not called upon to express our opinion whether the admission of these two statements would be sufficient to reverse the case.

All of the assignments of errors having been sustained, it results that the judgment of the lower court must be reversed and the action dismissed. The cost of the cause including the cost of the appeal is adjudged against the defendant in error, Mrs. Lena Jackson, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.