. METROPOLITAN LIFE INS. CO. *v.* OWENS.

*(Nashville,* December Term, 1951.)

Opinion filed March 7, 1952.

EVANS, EXBY, MORIARTY & PETREE, of Memphis, for appellant.

ROBERT M. BURTON and TOM P. MITCHELL, both of Memphis, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Metropolitan Life Insurance Company, appellant here, issued a group life insurance policy to the Memphis Light, Gas and Water Division covering certain of its employees. The policy so issued is commonly known in

group insurance as the master policy. Certificates were issued by the Insurance Company to the employees covered by the master policy. On April 26, 1949 one such certificate was issued to employee George W. Owens evidencing the fact that his life was insured under said group policy in the amount of $2500. The beneficiary named in said certificate was his wife, Callie Owens. He died on July 26, 1949. The beneficiary brought this suit to recover under the aforementioned master policy. The Insurance Company denied liability on the ground that the policy was not in force at the time of Owens' death. That is the ultimate sole issue in this suit.

The facts were stipulated. The Chancellor, without saying why he so thought, held that the policy was in force at the time of Owens' death, and, therefore, allowed a recovery. Because the facts were stipulated, the appeal of the Insurance Company is to this Court, where the contentions of the parties are supported by thorough briefs.

The master policy, insofar as pertinent to the question to be decided, provides: "Section 10. Conversion Privilege.—Upon termination of employment of any Employee, all his insurance hereunder shall immediately cease,— and the said Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable—a policy of Life Insurance—in an amount equal to the amount of his protection under this Policy at the time of such termination."

The provisions of the certificate issued under this master policy to employee, George Owens, is in accord with the above quoted provisions of the master policy.

One of the stipulations entered into between the parties is that on June 13, 1949 Owens was discharged by his

employer because of a fight in which he had engaged on that date with a fellow employee. Therefore, in considering whether the policy was in force at the time of Owens' death on July 26, 1949, we must proceed on the basis that Owens' employment with the Light, Water and Gas Company had been terminated forty-three days prior to his death because of his engaging in this fight.

Inasmuch as Owens' employment had been terminated at the time of his death, and had been for forty-three days, the very language of the policy hereinabove quoted requires the conclusion that Owens' insurance under the master policy was not in force at the time of his death, *Sanford* v. *Insurance Company*, 159 Tenn. 556, 20 S. W. (2d) 1043; *American National Insurance Company* v. *Jackson*, 12 Tenn. App. 305 (certiorari denied) unless further facts stipulated had the effect under the quoted language of Section 10 of the policy to keep the insurance in force.

It is stipulated that Owens' death resulted from a head injury received in that fight. Further, that he was not disabled thereby until July 21, thirty-eight days after this fight and after his employment had been terminated. A tumor on the brain developed.

■ ■ As we understand it, one of the contentions made in behalf of the beneficiary, Callie Owens, is that inasmuch as the injuries from which Owens died were received before his discharge, and while ''on duty'', his insurance under the master policy was not terminated by reason of that discharge. This Court is constrained to think that it is because of the equitable appeal which this insistence prima facie invokes that the Chancellor held the master policy to have been in force at the time of Owens' death. Probably it was principally for this reason that counsel for Callie Owens considered this

bill to be maintainable. It is elementary, however, that "equity follows the law. Where there is no legal liability, equity can create none. *Head* v. *Samford*, 3 Peere Wms. 409." *Henderson* v. *Overton*, 10 Tenn. 394, 397.

This insurance policy plainly provides that the insurance shall cease "upon termination of employment of any employee". Cases in which injuries are received before the employment is terminated are not excepted. The Court is without authority to change the contract by writing such exception into it. Nor is there involved any element of fraud in terminating Owens' employment.

With further reference to this insistence, a much stronger equitable appeal is invoked by the situation that arose in *American National Insurance Company* v. *Jackson,* supra. A policy like the one here involved existed in that case. The employment there was terminated by reason of an illness from which the employee died some months after her employment had been terminated. It was held that the policy was not in force at the time of her death. The statement of the Court was that "the insurance under a group policy is terminated when the servant ceases to be an employee". 12 Tenn. App. at page 309. Moreover, in the case at bar, Owens' employment was terminated because he engaged in a fight with a fellow employee, not because he received in that fight injuries which were disclosed as serious by subsequent developments.

Under the heretofore quoted Section 10 of the policy Owens, after his discharge, had the privilege of procuring a policy of insurance in his own name for the amount for which he had been insured provided he made application for the issuance of such policy within thirty-one days after his employment had been terminated, and paid

the premium. He died without ever having made such application.

It was on July 12, 1949 that the Memphis Light, Gas and Water Company gave the Insurance Company notice that Owens' employment had been terminated as of June 13, 1949. The insistence made in behalf of the beneficiary is that her husband had thirty-one days from date of this notice, July 12, 1949, to the Insurance Company within which to make application for the issuance of a policy to him, and that the insurance on his life under the master policy remained in force during that thirty-one days.

■ ■ The master policy does not provide that the insurance shall cease *upon date of such notice* that employment was terminated on some prior date. The unequivocal provision of the policy is that "*upon termination* of employment—all his insurance hereunder shall immediately cease". (Emphasis supplied.) It is impossible under that language of the policy to hold that the thirty-one days within which to apply for a policy commences to run from the *date of notice* of termination of employment.

Moreover, this insistence assumes that during the thirty-one days within which the discharged employee may make application for insurance that the insurance under the master policy continues in force. This is a mistaken assumption. "The privilege of conversion within thirty-one days after termination of the insurance did not of itself operate to keep the insurance in force. Upon such termination, something else had to be done which was not done. Application had to be made to the company for another policy and premium thereon had to be paid applicable to the class of risks to which he belonged and to the form and amount of the policy at his

then attained age, although it could be done without evidence of insurability. It was a mere option extended for thirty-one days and not a contract to continue the former insurance." *Missouri State Life Insurance Company* v. *Hinkle,* 18 Tenn. App. 228, 231-232, 74 S. W. (2d) 1082, 1083.

It is obvious from that herein pointed out that the policy sued on in this case was not in force at the time of Owens' death; hence, that the beneficiary Callie Owens is not entitled to recover by virtue of that policy.

The brief of appellant cites a number of decisions from other jurisdictions in which the conclusion above stated under similar policies was reached by the Courts. These decisions will be found annotated in 105 A. L. R. 418 et seq., or in the previous identified volumes of A. L. R. to which the annotation in 105 A. L. R. states that it is a supplement. That brief likewise refers to the text of 29 American Jurisprudence under the title of Insurance, Section 1377, wherein cases said to be to the same effect are cited. This Court has not discussed these decisions from other jurisdictions because it is the opinion of this Court that the unambiguous language of the insurance contract in question and the Tennessee decisions to which we have referred are conclusive of this case against the contentions made in behalf of the beneficiary, Callie Owens.

The two cases principally relied on in support of the insistences which have been made in behalf of Callie Owens are *John Hancock Mutual Life Insurance Co.* v. *Shoun,* 28 Tenn. App. 425, 191 S. W. (2d) 186 (Certiorari denied) and the South Carolina case of *Powell* v. *Equitable Life Assur. Society,* 173 S. C. 50, 174 S. E. 649. Counsel's attention is called to the fact that in each of those cases the Court's conclusion was that the evidence

created a jury question as to whether the respective employee involved had been discharged or whether such employee has been temporarily laid off. That being the issue, and without regard to any other consideration, neither of those cases is applicable here, since there is no issue of fact upon that question. The bill filed by Callie Owens alleges that her husband was "fired". The stipulation into which she entered, and which is conclusive here, is that he was "discharged" by his employer because of having engaged in a fight with a fellow employee during the course of his employment.

The decree of the Chancellor will be reversed and the bill dismissed. All costs in each Court will be adjudged against the appellee, Callie Owens.