# SAVAGE v. SPUR DISTRIBUTING CO., INC.—
## 228 S. W. (2d) 122.

Middle Section.   December 9, 1949.

Petition for Certiorari denied by Supreme Court, March 17, 1950.

28

Jay Evans, of Nashville, for plaintiff in error.

Judson Harwood, Wilson Sims, and Bass, Berry & Sims, all of Nashville, for defendant in error.

FELTS, J. This is an action for damages for breach of an alleged employment contract. At the close of plaintiff's evidence the trial judge directed a verdict for defendant and dismissed the action. Plaintiff appealed in error and insists that the evidence made a case for the jury upon one or another of the theories on which he sought a recovery.

His first theory, stated in the first count of his declaration, is that he and defendant made a contract by which it employed him as its assistant secretary at a salary of $3,600 per year and a bonus of at least $600 per year, and bound itself to continue such employment permanently, or so long as the position was available and he was able to perform and did perform the work satisfactorily; and that defendant discharged him, breached its contract, and became liable for the damages sued for.

The evidence tended to prove these facts. Plaintiff lived in Pittsburgh, Pennsylvania, and was employed as an accountant by Price-Waterhouse, a firm of accountants in that city. They had been doing work for defendant, and through them he learned that there was soon to be a vacancy in the accounting department of defendant's Nashville office. On or about April 25, 1946, he came to Nashville and applied for the position.

He discussed the matter with defendant's vice president, Mr. Hines, and its secretary, Mr. Peterson. He asked whether the position would be temporary or permanent. They told him that it would be permanent and he would have it as long as he performed the work satisfactorily and that he would be paid a salary of $300 a month and a bonus to determined by the company's earnings. They also discussed the possibilities of increases in the salary, and plaintiff understood from them that there might be such increases and that his bonuses would exceed the bonuses he had been receiving from Price-Waterhouse, which were $600 per year.

As a result of this discussion the secretary, Mr. Peterson, employed plaintiff to be his assistant to take charge of defendant's accounting department. There was no written contract but only the oral understanding

reached in their discussion. Plaintiff began work June 9, 1946, and later moved his family to Nashville. He was paid his moving expenses and was paid his salary each month and a bonus of $150 at the end of 1946. There was no evidence as to the earnings of the company.

He continued to receive his salary each month until October 20, 1947, when he was discharged by Mr. Knestric, who had succeeded Peterson as secretary. He was given a month's salary in advance in lieu of notice, and his discharge slip gave this explanation: "Reorganization of Secretary's Office which decentralized the duties performed by this employee." But it appears there had been some disagreement between him and the new secretary, which might have been the cause of his discharge. He then established here an accounting business of his own and has been earning as much as his salary was.

■ ■ We think there was no evidence of any breach of contract. There was no contract for employment for any definite time. It was an indefinite hiring, merely a promise by defendant to employ plaintiff permanently as long as he did the work satisfactorily. But there was no counterpromise by him to work for it for any length of time. He was free to quit any time—to accept other employment whenever he chose. It is a general principle that unless both parties are bound neither is bound. Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S. W. 398; Combs v. Standard Oil Co., 166 Tenn. 88, 93, 59 S. W. (2d) 525; other cases cited in Annotation, 135 A. L. R. 675.

■ The general rule in the United States is that such an indefinite hiring is a hiring at the will of both paties and may be terminated by either at any time. Combs v.

Standard Oil Co., supra; American National Ins. Co. v. Jackson, 12 Tenn. App. 305, 308: cf: Earle v. Illinois Cent. R. Co., 25 Tenn. App. 660, 677, 167 S W. (2d) 15, 26, certiorari denied 317 U. S. 680, 63 S. Ct. 161, 87 L. Ed. 546.

■ Such a contract for permanent employment means nothing more than that the employment is to continue indefinitely subject to the continuing satisfaction of both parties and may be terminated at the will of either party. Combs v. Standard Oil Co., supra; for other cases see Annotations, 35 A. L. R. 1432; 135 A. L. R. 646; 161 A. L. R. 706. " 'A contract of employment for an indefinite term may, in the United States, be terminated at the will of either party. A contract for permanent employment where the consideration is paid wholly or partly in advance, as by the relinquishment of a claim for personal injuries, or which is supported by a consideration other than the promise to render services, is not such an indefinite contract as to come within the rule. But a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party.' " Combs v. Standard Oil Co., supra, 166 Tenn. 90, 59 S. W. (2d) 526.

There is a line of cases where the employee paid his employer in advance a valuable consideration in addition to his promise to render the services for the wages paid, such as a release of a claim for damages for personal injuries (East Tennessee, V. & G. R. Co. v. Staub, 75 Tenn. 397), or giving up of a competitive business. Carnig v. Carr, 167 Mass. 544, 46 N. E. 117, 35 L. R. A.

512, 57 Am. St. Rep. 488. In such cases it is said that the employee purchased an option for permanent employment terminable only at his will. 35 Am. Jur., Master and Servant, Sec. 25, p. 431.

Plaintiff likens this case to the Staub, Carr, and like cases. He insists that he gave up his former employment and had the expenses of moving his family here, of finding living quarters, and of buying a home here at an inflated price; and that these things constituted an additional advance consideration sufficient to support a contract for permanent employment—sufficient to purchase an option binding defendant to employ him so long as he remained able and chose to continue the employment.

These things, however, do not appear to have been mutually understood by the parties as any part of the agreed exchange or consideration. Defendant's offer was only for plaintiff's services as its assistant secretary. This was the only consideration moving to it. These other things were of no benefit to it. At most they were merely a detriment to him incident to preparing himself to accept its offer—only the same sort of detriment that ordinarily results to any employee who leaves one employment and goes elsewhere to accept another.

Some cases do hold that such a detriment in itself is a sufficient consideration to bring the case within the rule of the Staub, Carr, and like cases. In the latter class of cases, however, the employee not only sustained a detriment to himself but also passed a benefit to his employer. We think the better view, and the one supported by the weight of authority, is that a mere detriment sustained by the employee in preparing him-

self to accept the employer's offer, such as here shown, is not a sufficient consideration to make an indefinite hiring terminable only at the will of the employee. This view seems to have been recognized in Combs v. Standard Oil Co., supra, 166 Tenn. 94, 59 S. W. (2d) 525.

Among other decisions supporting this view are: Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S. W. (2d) 916, 135 A. L. R. 642; Rape v. Mobile & O. R. Co., 136 Miss. 38, 100 So. 585, 35 A. L. R. 1422, 1427; Arentz v. Morse Dry Dock & Repair Co., 249 N. Y. 439, 164 N. E. 342, 62 A. L. R. 231; Skagerberg v. Blandin Paper Co., 197 Minn. 291, 266 N. W. 872; Page v. New Orleans Pub. Service, 184 Lt. 617, 167 So. 99; Minter v. Tootle-Campbell Dry Goods Co., 187 Mo. App. 16, 173 S. W. 4; Lynas v. Maxwell Farms, 279 Mich. 684, 273 N. W. 315.

". . . The effort of plaintiff to show an additional consideration passing from him to defendant was abortive, since it shows that he merely abandoned other activities and interests to enter into the service of defendant—a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master. The hiring of plaintiff being clearly shown to have been for an indefinite time, the court should have directed a verdict for defendant." Minter v. Campbell Dry Goods Co., supra, 187 Mo. App. 28, 173 S. W. 8.

". . . The detriment, if any, sustained by plaintiff in preparing himself to accept the offered employment was not mutually understood as being a part of the consideration. The offer was made only for the services to be rendered by plaintiff as manager of the defendant's

milk station in Birmingham. The action of plaintiff in disposing of the restaurant was only a necessary incident in placing himself in a position so that he might perform the contract and was not in any way considered by the parties as a part of the performance." Lynas v. Maxwell Farms, supra, 279 Mich. 688-689, 273 N. W. 317.

Plaintiff's second theory, as set forth in his second count, is that the contract of employment was at a salary of $3,600 per year with a bonus of no less than $600 per year, that this was a definite hiring for at least a year, that it was automatically renewed when he began to work the second year, and that the discharge of him before the end of that year was a breach of contract entitling him to damages.

There is conflict of authority as to the effect of a provision for periodic compensation to an employee. Where the contract provides that the employee shall be paid so much per week, month, or year, with nothing else to fix the time of hiring, some cases hold it to be a contract for a week, month, or a year. But other cases treat such a unit of time merely as measuring the compensation and not the duration of the employment, and hold it to be an indefinite hiring which may be terminated at the will of either party. American National Ins. Co. v. Jackson, supra, 12 Tenn. App. 305, 308; Godson v. MacFadden, 162 Tenn. 528, 530, 39 S. W. (2d) 287; Annotations 11 A. L. R. 469, 100 A. L. R. 834, 161 A. L. R. 717; 35 Am. Jur., Master and Servant, Sec. 20, pp. 458-9.

Under either view, we think the hiring in this case cannot be held to have been a hiring for a year or one from year to year. As we have seen, the evidence was that plaintiff's salary was fixed not at so much per

year but at $300 per month. Under the one view this would be a hiring for a month or from month to month; under the other it would be an indefinite hiring. The provision for the bonus was contingent on whether there were any earnings by the company and on the employment not being sooner terminated by either party. Hughes v. Taubel-Scott-Kitzmiller Co., 6 Tenn. App. 432.

Plaintiff's third theory, averred in his third count, is that he was entitled to recover for overtime under the Wage and Hour Act, 29, U. S. C. A. Sec. 201 et seq. ▉ He did not save in the trial court his right to present this question here— did not make it a ground of his motion for a new trial. Therefore we cannot consider it. Our Rule 11(5), 29 Tenn. App. 831, Vol. VII, Williams' Code, p. 547; Supreme Court Rule 14(5), 185 Tenn. 868-869, Vol. VII, Williams' Code, p. 527; Jacks v. Williams-Robinson Lumber Co., 125 Tenn. 123, 140 S. W. 1066; Nashville, C. & St. L. Ry. v. Browning, 176 Tenn. 245, 276-277, 140 S. W. (2d) 781, 793.

All of the assignments of error are overruled. The judgment of the circuit court is affirmed. The costs of the appeal in error are adjudged against plaintiff.

Howell and Hickerson, JJ., concur.